We want to welcome students from Macomb High School in Macomb, Mississippi, which happens to be my home state. You are welcome, and we are looking forward to two oral arguments remaining on this morning's docket. The first is Nola Spice Designs v. Haydel Enterprises, clause number 13-30918. Is the appellant ready to proceed? Appellee ready to proceed? You may proceed. Good morning. May it please the Court, Justin Urso with Nola, or the appellant, Haydel Enterprises Inc., the defendant and counterclaimant below. If I may, I'd like to address three issues this morning and use illustrations to do so. Those three issues are inherent distinctiveness, unfair competition by passing off, and copyright infringement. The problem in this case is that the district court compared apples with apples. Now, that's not the customary way that you hear that phrase. Usually, when you're talking about comparing items, you hear the phrase comparing apples with oranges, and that's the problem. So let me explain why I say the problem is that the district court compared apples with apples. The district court made a crucial error on the issue of inherent distinctiveness. This error inevitably led to the court's errors on the remaining issues that it decided. Let me begin with three illustrations. Picture in your mind's eye a basket of apples. Now picture in your mind the word apple. Apple, generic for apples. Now picture a computer, a smartphone, and a music player. Now compare with those items the word or the phrase apple computer and the iconic apple computer design mark, the apple with the stem and a bite removed from it. Apple, generic for apples. Apple not generic for computers, smartphones, music players, et cetera. Let's consider a second illustration. The trinket that is in the record excerpts at 14 made from a broken Mardi Gras bead necklace. Picture the phrase Mardi Gras bead dog. Nola Spice argued and the court below found that that phrase was, or at least the bead dog part of it, was generic or alternatively descriptive of the trinket. Now picture a king cake pastry, a cinnamon roll in the shape of a ring, an oval. Picture a baseball cap, a shirt, and a baby jumpsuit. Now compare the word or the phrase Mardi Gras bead dog to the pastry, a baseball cap, a baby jumpsuit. Not generic, not descriptive. We could use popular well-known marks to illustrate the same concept. Take the polo player with the raised mallet on a horse or the crocodile, generic perhaps for polo-themed clothing or generic for the animals of that species, but not generic or descriptive of clothing, therefore inherently distinctive. Now, picture in your mind the counter in a jewelry store. You're looking at a bracelet, a necklace, earrings, and an engagement ring. The phrase Mardi Gras bead dog, is that generic of jewelry or descriptive of jewelry? Consider the Haydell mascot. I'm going to interrupt you just because of your time. You probably want to hear our questions and it's helpful and it's an area of law that you understand, so help me hear a little bit. You've got a lot of, you've got this distinctiveness continuum. Generic items, not you can't register and then say are yours and exclude others. It sounds to me, especially when I look at the record and I look at the sculpture or acknowledging that bead dogs, even Mardi Gras bead dogs, that was generic. Or the trinket. Well, you were at, I think one would say generic generally, and then is your proposition that your client then came in and took it out of the world of genericism and made it distinctive so that it could be then registered? I mean, I think of generic things, yo-yos, Kleenex, Band-Aids. There would be no, I don't think, maybe you can tell me otherwise. You couldn't come in and create a t-shirt with a picture of a Band-Aid and say, well, now that generic word has distinctiveness. Could you? Or is that exactly what you're saying? Not exactly, Your Honor. Look, the easiest example for me is Apple. It's generic for Apples, but it's not generic for smartphones. In the same way, the phrase Mardi Gras bead dog may be descriptive of the trinket or generic of the trinket made from broken Mardi Gras necklaces. But it's not generic or descriptive of the goods for which Haydel obtained a federal trademark registration, which was king cake pastries, clothing. I thought the record is pretty clear. There's never been a king cake made in the shape of a, it seemed to me, I couldn't even tell whether Haydel's ever made a pastry that is a bead dog pastry. The record doesn't reflect that. Do they even sell one that's a Mardi Gras bead dog king cake? Not as far as I know, Your Honor. I'm trying to stick to what's in the record, but. I thought the question, and again, tell me if, I thought it all backs up way as long ago as 1921, before Lanham, where Learned Hand says, the question is, would the customer think that when they see a word or a design, they think, that's Haydel, single source, single good, or would they think, that's a bead dog? And once you try to ask that, and the whole point about, in society, is you need to make yours distinctive. So if you want to trademark something, you should say, Haydel's Mardi Gras bead dog, no confusion. But you can't remove something generic by just saying, well, we are there. You're not removing it, Your Honor. Consider that spectrum that you referred to, generic, descriptive, suggestive, arbitrary, fanciful. Apple is generic for apples, but it's arbitrary when applied to computers, smartphones, etc. It's the same thing with the phrase Mardi Gras bead dog and the mascot. It may be descriptive of the Mardi Gras trinket, but it's arbitrary with respect to pastries, with respect to clothing, and with respect to- But you've got to make it distinctive. Like the mascot for Tulane is the wave, but the registered thing is green wave. The arbitrariness comes in. The consumer wouldn't ever think that's a real wave. They would think that's their wave because it's unusual. But you didn't do anything to be distinctive. You just took what was out there and said, okay, the little thing the kids make is what you, jeweler, can't make anymore. I don't agree with that entirely, Your Honor. The mascot is a caricature. Okay, so it becomes the caricature thing. But if you have Superman and then you caricature it with larger muscles, you would be infringing on the original Superman. You can't just caricature an item and say, well, now that's our version. You're committing the trademark infringement. Take the example of Mickey Mouse. Okay. Okay? Disney created Mickey Mouse. Yeah. You can buy Mickey Mouse earrings. You can buy Mickey Mouse necklaces with the charm. They've got it. Pardon? And they have it. That's a perfect example. That's like LSU. Mike the Tiger. But you make it distinctive by Mike. Mickey Mouse, it's distinctive by Mickey. If you'd said, hey, Dell's B-Dog, you would have an argument. But you just say B-Dog, but everybody talks about B-Dogs. But the mascot, Your Honor, is a caricature of a dog. Okay. So what's the best caricature case? Because I see that point and it stumbled me thinking about it. Where do you, where can you take a generic item and then caricature the description of it so that it's now yours? And the customer would always think, hey, Dell, instead of Mardi Gras trinket throws. What's the best case that has that happening? I couldn't, I'm not aware of a case, Your Honor, that talks about a mascot and that. Or a caricature taking a generic thing like Kleenex, and then we're going to make it look a little bizarre. We're going to put a necklace around it, which is, it seems like, what the sculpture did. And now we're going to say, that isn't what most people would think of Kleenex generally. They would always think it's from my cellar. What case does that? I can see the logic. I'm, I'm, I'm not aware of a Fifth Circuit case. Yeah. Or any case. Any other. Yeah. That addresses that issue. What we have here is a case opportunity. Pardon? What we have here is a case opportunity. Yes, case opportunity. We can go from generic to caricature to arbitrary. That's what you want us to do, right? Well, what I'm saying, Your Honor, is, is that both the, the word phrase, Mardi Gras B-Dog, and the mascot, which is a caricature. Both of them are arbitrary when applied to pastries, clothing, and jewelry. They don't describe pastries, they don't describe clothing, and they don't describe jewelry. And, and one other point, Your Honor, when, when you talked about Learned Hand's prescription, the, the consumer does not have to think of Haydale. The consumer only has to think common source. Because the Lanham Act expressly states in the definition of trademark, in section 45, that the trademark indicates a source, quote, even if that source is unknown. So, Ms. Doerr did not have to know that Haydale was the source of the mascot that was spread all over the city in approximately 70 statues in the public art project. She only had to know, which she apparently did, that it was a common source. Now it's a refined argument, and I think part of the reason my, my, my, I think part of the reason this is a difficult case, but disagree with me, is that it, this is a significant refinement from what was presented before Judge Barbier. When I read the record, and I know you've said those, my clients are not lawyers, but that the, in, throughout the record, it's nobody can ever make a bead dog, even a trinket, that's ours. So the proposition was a sweeping one that I think you would agree is incorrect legally. Now it looks like, and, and maybe what would be helpful, I'll turn it into a question. When did you first say, no, this is limited to shirts, pastries, and it's that arbitrary quirky connection that's our case? When did you first assert that? It, it was always that way, because that's what the federal registration covers. But why did the two Haydels then say exactly the opposite in the record? They said nobody can make a bead dog without infringing our trademark. Your Honor, I was not counsel in the trial court. All I can say is that clearly they were, they were ill-informed. Okay. That, they, they, they overstated their case. And they also made that contention in connection with a Mardi Gras bead dog, the mascot bead dog. Is that right? Which contention precisely, Your Honor? That this was some trademark. It is registered. Some identifiable mark. The, the, the mascot is a registered trademark. The, the phrase Mardi Gras bead dog for king cake pastries, for clothing, and for jewelry, and the design of the mascot, which is an exemplar of the statue that's in front of the bakery, the sculpture, which was licensed and then spread across the city in 70 statues in the public art project. So they have, and they also have a copyright registration. The Haydels do. So they were ill-informed as to the scope of their rights. But they have rights. Their, their, their rights are there nevertheless. And I don't think a misstatement in their deposition should, should be held against them because they're, as I said, bakers, not lawyers. What's the scope of, or what's the role of public recognition of I guess the trademark in classifying something as arbitrary? I don't know if that question makes any sense. Let me explain to you this way, Your Honor. I mean, the point is that what if nobody, nobody says, nobody does identify it as Haydel's deal. Okay. The answer to that, Your Honor. Is it still arbitrary? Yes, Your Honor. The, the, the public perception and what has happened in terms of the effect, for example, of advertising and marketing comes into play only if the mark is descriptive. If the mark is arbitrary or suggestive, then it's inherently distinctive, which is what the trademark office found when it issued the registrations. Okay. If the mark were not inherently distinctive, then the mark owner has to prove acquired distinctiveness, which many of the cases refer to as secondary meaning. But if the mark, if the phrase Mardi Gras Bee Dog, and if the mascot design is arbitrary with respect to the goods that, that Haydel sells, king cake pastries, clothing, and jewelry. Okay. What's the best case for, with respect to? I know you're giving us the Apple example, but I need a case. I want a case that says it's arbitrary with respect to a unique type of sale. I think that's the Sawicko case, Your Honor. Okay. Which is cited in our briefs. Which affirms a generic finding. You're saying there's language in there that says. I don't remember exactly, Your Honor. Okay. But I would say that the Amazing Spaces case and the Sawicko case are two that I would turn to. But they don't deal with caricatures. Interesting. All right. Thank you, Mr. Arso. Good morning, Your Honor. Jason Foote on behalf of Nola Spice Designs and Raquel Duarte. May it please the court. Judge Higginson, I don't know that I could have given any better examples. In fact, the t-shirt example of the apple was one of the arguments I was frankly going to make in this case. There is something called a Mardi Gras Bee Dog, or Bee Dog for short, and it wasn't created by Haydels. It was created 50 or 60 years ago when the children in New Orleans started creating bead dogs out of broken Mardi Gras beads. And they called them Mardi Gras Bee Dogs, or Bee Dogs for short. That has existed in this area. Anyone familiar with Mardi Gras might know that. Everyone knows, and they're conceding that now. Their argument is refined down to this arbitrariness point, I think. Which is, look at apple. Apples have always been out there as fruits. Absolutely. But you had Steve Jobs, genius that he is, said, if I associate apple with a computer, that is a protectable trademark. And there's logic to that. There is some logic to that, your honor. And the trademark, the Patent and Trademark Office defines what that means by arbitrary. The cases, the circuit defines that. And the definition is a word with a known meaning that has no association or relationship to the product or service. This court has defined it as words that are totally unrelated. That's not the case here. We have a Bee Dog image and a Bee Dog phrase that goes on a t-shirt or that goes on a hat. It is directly related to their product. It is not totally unrelated. If they want to start making power tools and call them Mardi Gras Bee Dog power tools, maybe they've got an argument there. They'd stuck with Haydale Bee Dog. There probably wouldn't be an issue here. And that brings up a very good point, because at the beginning of this whole process, when we got the cease and desist letter and my client came to me, the record reflects we wrote to Haydale's and we said, hey, tell us what the big deal is. Give us a chance to make a limiting statement if we need to. We can call it Nola Spice Bee Dogs if you want us to, to distinguish it. Their response was, stop making them, period. Now they've taken a little bit of a different approach, as you pointed out. Now they're saying, well, even some of Nola Spice's Bee Dogs might not infringe, because maybe she can do the collar with a chain instead of a set of beads. And that wouldn't necessarily infringe. The scope of their argument, as you pointed out, Judge Hickinson, has changed through this process. The Apple analogy is the textbook example. It's virtually in every trademark case that we read these days, because as to a definition of what is arbitrary. Look more closely at the definition of what generic means. The case law and the trademark defines generic terms as one which identifies a genus or a class of things or services of which the particular item in question is merely a member. That is exactly what Judge Barbier found at the lower court level. And it's supported by the record, because- What about the two cases at the finish that he said are more on point? Amazing Spaces was an opinion written by Judge King, and it's- Actually, I don't think I did write it. I was on the panel. On the panel. And- Judge Rosenthal wrote that. Okay. And it was very on point with regard to the design mark. We're sort of focusing on the word mark at this point. But the design mark, the Amazing Spaces case, affirmed summary judgment and decided that the minor things that that copy or trademark holder did to the star symbol wasn't enough to take it out of the realm of genericness. And it's been used by many other storage facilities and other people throughout other things. The important thing I'll point out about the Amazing Spaces case, since they're trying to distinguish between jewelry, trinkets- By the way, dog trinket is a word created by Haydell's in this argument. It is not reality. If you go on your internet and you type in dog trinket, you don't pull up Mardi Gras bead dogs. You pull up some other little figurines that might be a trinket of some kind. That is a creation of Haydell's attorneys. You go and you type in bead dog or Mardi Gras bead dog, what pops up? Haydell's image sculptures pop up. My client's jewelry designs pop up. The YouTube videos of children showing how to make a Mardi Gras bead dog pop up. Now what Haydell's has done is they've taken that existing image and they characterized it, caricatured it a little bit. They put a necklace or a collar on it. Their own artist testified in deposition, which is in the record. It took him less than five minutes, literally, to change the design and come up with his creation. I don't see that as that compelling. You could suddenly have an inspirational take a bite out of an apple. I mean that type of genius can happen all of a sudden. I think part of the problem, you tell me what you think about your client when she's making these things that look quite similar. And you have a sculpture they commissioned someone to make and it does have distinctive features. The little bulbs melded together the necklace. Then your client starts making something that you could say is different. You do say is different, but she's standing in front of their sculpture. And I know your client took all that down, but that begins to look a lot more like unfair competition. It could in this sense. There are two distinguishing things that we need to talk about.  They don't have a trademark on sculptures. They have a trademark on king cake pastries, clothing, and jewelry. So when you start talking about the technicalities of the case law and trading off and passing off. It's the copyright filing on the sculpture though. The copyright filing is a different situation. And that would be a different standard because under trademark law you're looking at likelihood of confusion. Under copyright you're looking at substantial similarity. Some blurred lines there sometimes, but it's a different standard. And you're saying yours is dissimilar. She didn't have the eyes. There are dissimilar features. The other point about all that is, when you look at the three different things together, you look at the children's Mardi Gras b-dog, the traditional Mardi Gras b-dog. You look at Haydel's sculpture and you look at my client's thing. The important question in both trademark and copyright analysis is, is the similarity because of the overall body shape. In other words, if my client puts her b-dog up on there without the necklace that comes off by the way, it's not a molded sculpture, but it comes off. If you take it off and you put them side by side, is the consumer, the relevant consuming public going to say, oh, I know now that that's not Haydel's b-dog. The answer I respectfully submit is no, because the overall look of the b-dogs, the spheres, the round beads, those things that create the body style of the b-dog is virtually the same. They've made a derivative work. In fact, in their argument, if you notice on copyright, what they tell you is they say, at least with regard to the necklace, she has copied. The case law is very clear. You don't get to take out single examples of things that you've done to a work and say, they're violating that specific component part. The test is overall look and feel in a copyright case. Our submission to you is that you can't separate each element and say, well, they've put a necklace on it, because then you've got to start looking at, well, she doesn't have the eyes and her tail is wire. It's not a bead. Her nose is wire. It's not a bead. If you start making those distinguishing characteristics, I think, frankly, we clearly win, because we do have distinctive characteristics. How much significance should we attach to the fact that Haydel was able to get a copyright, a trademark from the patent office? Well, I mean, we would never have a trademark case if that was the test. I mean, you get a presumption of validity when you have a trademark, but the case law, including the Amazing Spaces case and many other cases throughout the circuit have said that can be overcome with the evidence. And what we've proven is that there is no likelihood of confusion, and that's the test in the trademark case. I will point out, by the way, with regard to that question, we cited in the record an email from the examining copyright officer, Mr. Briganti, who is quoted as saying, based on Haydel's own submission, and again, we didn't make any arguments. I wasn't there in Washington. My client wasn't there. And Mr. Briganti said, the catalog refers to Mardi Gras bead dogs, which have apparently become well-known and traditional parts of Mardi Gras. That's what the copyright examiner said, without any argument to the contrary from anybody else. Now, they were still able to get the copyright, because they wrote about a five-page thesis from Mr. Hazard, their attorney at the time up in Washington, who distinguished the merging spheres and the fact that they put the necklace on and the color scheme. And Briganti, even in his acceptance, basically says, okay, we have no reason to disagree with you, so we'll go ahead and give it to you. And that's basically how the copyright came down. I will point out, with regard to the findings in the district court, that the evidence was very clear. And Judge Higginson, you pointed it out. Ryan Haydell, one of the owners of Haydell's, I put a standard, traditional Mardi Gras bead dog in front of him, without the collar or anything. And I said, is that Haydell's design? And he agreed. He said, yep, that's the only way you can really make it. And that's what Judge Barbier found. And we kind of get into the Rosenthal decisions and the merger doctrine and copyright, which is brief, and I don't need to spend a lot of time on that. But a bead dog can maybe be changed a little bit in shapes and sizes, but a traditional Mardi Gras bead dog that has been made for 50 or 60 years in the streets of New Orleans by children has that same look and feel. My client, maybe she uses glass beads to make it a little more decorative. She adds themes and things like that. But the overall look and feel is identical. Haydell's design, Mark, is taking what has been the Mardi Gras bead dog design for years. They merged the spheres together. The critical question, though, is what is the consuming public going to do? And in amazing spaces... You know, we're trying to get at just some law, and I appreciate what you're saying. It's helpful. But, and I'm not trying to trivialize it, but bunnies, rabbits, you know, those are generic. But then, as I think they point out in their brief, in comes tricks. And they've got that sort of distorted, caricatured little bunny. And they get, that's a trademark for them. And then in comes whatever the battery is, like Energizer Bunny. Presumably, they've got a trademark there. They probably do. They certainly would have a copyright, because copyrights... Okay, but stick with me on that. So batteries don't equal bunnies. That's arbitrary. They were clever. They caricatured it. No cases on that? Isn't that right, the realm that we're in? Well, it is. And the Amazing Spaces cases, I think, answers a lot of those questions. Okay, so answer, why do they get trademarks in Hay Delta? Well, because, first of all, the Energizer Bunny, as it is commonly referred to, has nothing to do with batteries. It's a mascot that has nothing to do with batteries. Okay. In this case, that's not the situation. The shirt that they sell to the consuming public has everything to do with the bee dog that has the identical design that's always been there. Same thing with Trix? Trix has the Trix Rabbit. It is a cereal. A Trix Rabbit with a design as a mascot has nothing to do with cereal itself. It is a different product. They didn't take a Trix Rabbit that had already been in the public for 50 years. What about the pastry? That's their core business. That is. The bee dog's got nothing to do with the King Cake, right? Well, I guess it does. Mardi Gras a little bit, but... It's Mardi Gras. And what they did, I don't know why they limited it to King Cake pastries when they got the trademark, but that's what they did. To my knowledge, and we argued this in the trial court record, and Haydell's came forward with no evidence, that they've ever made a King Cake pastry in the shape of a bee dog. They have made little trinkets, to use that phrase, that were pulls that went into King Cakes, like the baby would at certain things. They've made ornamental things that they've sold online, which sort of look like a bee dog. But they've never made a King Cake pastry bee dog that I'm aware of, and the record doesn't reflect that. You're saying it's always the kind, the class, that's the item that they're referring to. My argument is it's not arbitrary, it's generic, because they took the phrase Mardi Gras bee dog, and they took the design of the same Mardi Gras bee dog, and as you sort of indicated, they took it out of what is a generic common knowledge, and they said, okay, we're going to put that exact same thing on a t-shirt, and we're going to say that's ours. We're going to put that exact same thing on a hat, and we're going to say that's ours. That's what I think makes it distinguishable from the apples cases and the Energizer bunny cases, because those things have nothing to do with what they're selling. In this case, the product is a Mardi Gras bee dog shirt, just like you said. I'm just surprised there isn't a case on this. But anyway, I've said that. I agree. To use your example, Your Honor, if I were to go take a picture of a children's Mardi Gras bee dog, and blow it up and put it on a t-shirt, and try to sell them if there was some fad that people wanted Mardi Gras bee dog t-shirts, and I would go try to sell them, I should be able to describe that as a bee dog t-shirt or a Mardi Gras bee dog t-shirt. The second... You couldn't describe it as a Hay-Dill bee dog. I could not, because that's using a name, that's using a distinguishing characteristic, okay? But we've never done that anyway. So they want to catch all the fish in the sea. You notice that they call their phrase Mardi Gras bee dog, their trademark bee dog, and in their copyright, they call it bee dog. They want both words. The lesson from IP lawyers to people and to kids thinking of a subgenius idea is make it distinctive, make the consumer know you're selling it. Absolutely. And that's the critical issue. And that's what all the cases say, including the trademark cases from this circuit, is it has to be so unusual... But the marketer wants to go the other way, right? Does, because it wants to appeal to the general public. But Hay-Dills even did that, Your Honor, in their original statue in 2008 that they put in front of their building. They knew they needed to distinguish it. They called it Hay-Dills Mardi Gras bee dog. Is that undisputed in the record? That is undisputed. That's a picture that's in their brief. You can see that in their brief. They've even got clothing. If you look online on their website, which we have examples of in the record, their online sales for clothing said Hay-Dills original Mardi Gras bee dog hat. They distinguished it themselves. But when somebody else, when a competitor like my client came in and started selling bee dog jewelry, they said, oh no, that's a little too close. In fact, they sent copyright notices to Facebook. And we've got the emails in the record of this. Their attorneys, when sent a copyright takedown notice to Facebook, Facebook writes back and says, we've looked at Ms. Duarte's postings and she's never used the exact phrase Mardi Gras bee dog. We don't understand what your argument is. Their attorneys write back and say, well, they use bee dog and boy, that's a little too close to what our trademark phrase is for us to be comfortable with it. Hay-Dills wants to dictate what the market is and that's not what trademark law allows. Getting back to the amazing spaces argument, this court said that in the Seabrook's Foods case, in the test that was established by Seabrook's Foods, the test for a design mark is that the combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that customers will automatically perceive it as the origin of the source, the trademark. Like you said, I look at a bee dog and say, that's Hay-Dills or that's from somebody that I know. That's the common source. That is not the case here. And in fact, the evidence reflects that. We've got multiple affidavits from customers who said, I don't know anything about Hay-Dills' relationship with bee dog. We've got emails unsolicited with regard to the litigation from Elizabeth Sparks who said, I want a Mardi Gras bee dog cake topper. Hay-Dills has never sold a Mardi Gras bee dog cake topper. That's undisputed in the record, but the lady called it a Mardi Gras bee dog cake topper. So that is a generic use of that phrase and that's what they wanted. The public in general doesn't associate bee dogs with Hay-Dills. I will touch briefly on the second. That's why I kept asking the question. Opposing counsel argues that what he has here is a caricature that is arbitrary. And I asked the question, well, what's the role of public perception in all of this? And what you're saying is it must have a role, except there isn't any in this case. Well, in the strict definition of what is an arbitrary thing, it's probably not. He's probably correct in that the cases don't typically look at the secondary meaning or the established distinctiveness in the public to determine whether a word mark or a design mark is arbitrary under the Abercrombie or the Seafood Brooks test. But in reality, what effect I think it does in the practical sense is proof that the public in general would associate it because that's the whole burden, that's the whole thing that we're trying to get at is does it distinguish the product to the consuming public? So it affects it, but probably not in the technical legal sense in the case law. What I will point out in the widespread, in the Amazing Spaces cases is, which was a design mark that is applicable in this case on that aspect of it, but possibly also to the word mark. In that case, the court did not limit its inquiry to a particular type of good or service. In that case, it was storage facilities, of course. When analyzing the commonality of a particular design, the court stated, we should not bind ourselves to uses beyond the self-storage services industry when widespread use of a design in other product areas makes it unlikely to identify that design with a particular source of goods or service. That's a direct quote from the Amazing Spaces cases, and it sort of gets to the point that he's trying to make is, well, we've never used it with clothing before, nobody's ever used it with hats or king cake pastries before. What the Amazing Spaces analysis was is, if it's so common in the relevant consuming market, which in this case would be people that partake in Mardi Gras celebrations, the traditions of Mardi Gras, you shouldn't be able to take it out of that realm of widespread use and say, okay, for this product, it's not generic. That's what they're trying to do. When we talk about secondary meaning, if you get to that point, if you determine that it is descriptive and requires secondary meaning, I would just note that the record is perfectly clear. There are no survey evidence, which this circuit says that it favors, especially in close cases like this. The record is clear that the sales from Haydell's for all of its bead dog products, clothing, king cake pastries, or bead dog jewelry is meager when you consider whether they've established any sort of public perception of Haydell's. They've got what they consider to be actual confusion that they can't give you the names of any consumer, of any consumers that were confused. That evidence comes directly from Haydell's themselves who says several customers asked. And in the record, that was two or three early on when they first started, when my client first started making them. So the inherent distinctiveness and all of that has been clearly established by the record. All right, thank you, Mr. Foote. Thank you very much. Roboto. Judge King, I believe that I heard Mr. Foote concede the point that I tried to make in response to your question, which is that acquired distinctiveness or secondary meaning or the public's perception only comes into play if the mark on the spectrum of distinctiveness is descriptive. It doesn't come into play if the mark is arbitrary. The reason I asked the question is that I happen to think that this bead dog that your client has designed is a caricature and it doesn't look to me like the ordinary bead dog. But the problem is that they haven't been in business long enough to have people associate it and they haven't done whatever they need to do to have people associate it with your client. And that's where the ox is in the ditch here. And I don't disagree with that, Your Honor, but we briefed this very carefully and the law is clear. If the mark is arbitrary, we do not have to show acquired distinctiveness. And Section 45 of the Lanham Act in the very definition of trademark says, even if the source is unknown, the consumer does not have to know the source. It just has to understand that it's the common source. Well, does that leave the door open for the possibility that if given more time, you could demonstrate some acquired distinctiveness? Yes, Your Honor, but in this case, it's not necessary because the marks are arbitrary, which the Trademark Office found when it issued our registration. Judge Higginson, I want to mention two cases. If it's descriptive, that portion of Barbies, but you're not saying that as to a generic item. You can't over time pull it out. No, no, if a mark is generic, it can never be registered. That's ultimately the question here. Judge Barbier said it's generic. Yeah, he said, or alternatively descriptive. Right. And we disagree, Your Honor. And how it's been used by you would be relevant to if it were descriptive. But if it's purely the binary choice of generic versus arbitrary, and you're contending arbitrary. Arbitrary, Your Honor. Okay, that's... Perhaps with respect to, as we said in our brief, perhaps with respect to jewelry, in the shape of bead dogs, descriptive. Excuse me, suggestive. Suggestive, not descriptive. Your Honor, I wanted to mention two cases that in response to your questions earlier, you had asked about a case involving a mascot. We have, upon reflection, thought of one. It's not cited in the briefs. It is a Fifth Circuit case. It involves Conan the Barbarian, and we'll be happy to send the clerk a cite afterwards. But it is a Fifth Circuit case. What happened there? Conan was... I don't remember the result, and I don't think that the facts were close enough, which is why we didn't cite it. Okay. But it is a case involving a character. I see. Or a caricature. Also, I think you might want to take a look at the Abercrombie case. It's a Second Circuit case by Judge Friendly. It's the one that establishes the spectrum, and in that case, the court found that the mark was distinctive for some products, but not for others. Okay. Okay, so I think you might want to take a look at that. I want to address two points in rebuttal. One is, with respect to the argument that there is no confusion, the heart of this case is passing off, not direct infringement. And the passing off occurred when Ms. Stewart posted photographs of herself on websites. Now, the timing here is significant. Louisiana SPCA licensed Haydell's marks for a public art project. The public display of the statues began in January of 2012. Ms. Stewart, in May of 2012, forms an LLC and begins selling her jewelry in the corporate form. At least as early as August 8th, she posts on her Facebook page, her Pinterest page, and her Twitter page, a photograph of herself leaning on with an arm over one of our mascots. We send the cease and desist letter on August 14th, which the record reflects the receipt shows it was received on August 16th. And then by September 7th, she has posted a second photograph of herself with her arm or standing next to another one of Haydell's mascot statues, and also has a background with over 30 photographs of 30 different statues, which she has taken from the Louisiana SPCA's website, our licensee, okay? Now, she says she didn't know it was Haydell. She doesn't have to know it was Haydell. She knew that those statues were not her artwork, and she had not taken those photographs. So she clearly knew that she was using somebody else's works to promote her goods, and those works were licensed works by Haydell. They were representations of Haydell's mascot, and she used Haydell's mascot to promote the sale of her jewelry. That's the passing off. On the copyright infringement. All right, Mr. Arnasol, you're out of time. Thank you very much. The court will take this matter under investigation.